**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, as Health Claims Administrator for Tyson Foods, Inc.; Tyson Foods, Inc.**

v.

**Dora Faye WILLIAMS; Ralph Williams, Jr.; H. Burt Glenn, Guardian of the Estate of Nathaniel Talmage Klunk.**

Civ. No. 93–3017.

United States District Court,
W.D. Arkansas.

July 19, 1994.

---

Woody W. Bassett, III, William R. Still, Jr., Bassett Law Firm, Fayetteville, AR, for Provident Life and Acc. Ins. Co. and Tyson Foods, Inc.

Russell C. Atchley, Vowell & Atchley, Berryville, AR, for Dora Faye Williams.

Jerry D. Patterson, Marshall, AR, for Ralph Williams, Jr.

Marcus Lane Vaden, Conway, AR, for H. Burt Glenn.

Peter G. Estes, Jr., Estes, Estes & Gramling, Fayetteville, AR, for James M. Peters, Kreiner & Peters.

## MEMORANDUM OPINION AND ORDER

H. FRANKLIN WATERS, Chief Judge.

This case comes before the court on a motion for partial summary judgment filed by plaintiffs Tyson Foods, Inc. and Provident Life & Accident Insurance Company. Defendant Dora Faye Williams filed a cross-motion for summary judgment. This court grants plaintiffs' motion for partial summary judgment and denies defendant's cross-motion.

## I. FACTS

On December 12, 1991, defendants Dora Faye Williams, her minor son, Nathaniel Talmage Klunk (Nathaniel), and Ralph Williams, Jr. were injured in a trailer fire. As a result of these injuries, Nathaniel was admitted for treatment to the Shriners Burn Institute (the Burn Institute). While under the care of the Burn Institute, Nathaniel suffered serious brain damage due to the Institute's alleged malpractice.

Tyson Foods, Inc. (Tyson Foods), through its Health Care Administrator, Provident Life and Accident Insurance Company (Provident Insurance), claims to have paid $658,907.52 in medical and hospital bills for treating injuries caused by the Institute's alleged malpractice. Tyson Foods paid these benefits pursuant to its employee benefits plan, and Nathaniel received these benefits through his mother who was a plan participant.

On or about December 25, 1991, the Burn Institute allegedly paid $6,500,000.00 to settle defendants' malpractice and personal injury claims against it. On March 16, 1993, plaintiffs filed this subrogation action against defendants to recover plan benefits that were paid to defendants under the employee benefits plan.

On June 2, 1994, plaintiffs filed a motion for partial summary judgment on the following issues: (1) that the Tyson Foods employee benefits plan is an ERISA plan; (2) that ERISA preempts any state subrogation laws involved in this litigation; and (3) that plaintiffs are the assignees and subrogees of the defendants, Dora Faye Williams and Nathaniel Klunk.

On June 27, 1994, Defendant Dora Faye Williams filed a cross-motion for summary judgment on the same issues, as well as on the issue that plaintiffs' subrogation claim is barred by the statute of limitations.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); Fed. R.Civ.P. 56. The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied.

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir.1987); *Niagara of Wis.*

*Paper Corp. v. Paper Indus. Union—Mgt. Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986).

The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport v. United States,* 600 F.2d 725 (8th Cir.1979), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The Court has recently reviewed the burdens of the respective parties in connection with a summary judgment motion. In *Counts v. M.K.-Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988), the court stated:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.,* '[to] point[ ] out to the District Court,' that the *record does not disclose a genuine* dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339, *quoting, City of Mount Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

However, the Court of Appeals for this circuit has also held that the court, in ruling on the motion for summary judgment, must give the non-moving party "the benefit of the reasonable inferences that can be drawn from the underlying facts." *Fischer v. NWA, Inc.,* 883 F.2d 594, 598 (8th Cir.1989) (*citing Trnka v. Elanco Prod.,* 709 F.2d 1223 (8th Cir.1983), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

### III. THE TYSON FOODS PLAN IS AN ERISA PLAN

■ The court concludes that the Tyson Foods plan is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ERISA defines an "employee benefit plan" as an "employee welfare benefit plan" which, in turn, is defined as "any plan … established or maintained by an employer … for the purposes of providing for its participants or its beneficiaries … medical, surgical or hospital care benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1), (3). Tyson Foods' employee benefits plan clearly fits within this definition and is thus governed by ERISA. Defendant offers no argument to the contrary.

### IV. THE TYSON FOODS PLAN IS SELF–FUNDED

■ The court concludes that the Tyson Foods plan is self-funded, and as a result, any state subrogation laws that may be applicable to this action are preempted. *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

There is no genuine issue of material fact that the Tyson Foods plan is self-funded. In a sworn affidavit, Lois Bottomley, Director of Group Insurance for Tyson Foods, states categorically that Tyson's plan is self-funded. Furthermore, the Administrative Agreement between Tyson and Provident requires that Tyson "retains sole liability to sufficiently fund for benefits payments as well as expenses incident to the benefit program."

Defendant Dora Faye Williams claims that when she received her benefits, she was on COBRA continuation coverage. Be that as it may, the COBRA plan was identical to the plan discussed above and the court's conclusion remains unaffected.

### V. PLAINTIFFS HAVE NO CONTRACTUAL RIGHT TO REIMBURSEMENT

Plaintiffs contend that they have a contractual right to direct reimbursement from defendants. Plaintiffs contend that this right is granted in the plan and also in a subrogation agreement signed by defendant Dora Faye

Williams. This court holds that plaintiffs have no such contractual right.

■ In interpreting the language of the plan and the subrogation agreement, this court need not defer to the interpretation placed upon it by the plan administrator. The plan does not give its trustees discretion to interpret subrogation language so this court must decide *de novo* any dispute over subrogation language. *Baxter v. Lynn*, 886 F.2d 182, 187 (8th Cir.1989).

■ In its analysis, this court must rely upon federal common law, including principles of contract interpretation, because the state common law of subrogation is preempted by ERISA, and ERISA itself is silent on the matter of subrogation. Where ERISA is silent on a particular subject, courts should depend upon federal common law to fill the gaps. *Lyman Lumber Co. v. Hill*, 877 F.2d 692, 693 (8th Cir.1989). In developing this federal common law, the Eighth Circuit has directed courts that they "may look to state law for guidance." *Id.* However, state law is not controlling.

■ Plaintiffs first claim that they have a contractual right to reimbursement under Section VII, subsection D of the Plan, entitled "Acts of Third Parties." The clause provides that the plan will not provide benefits for injuries caused by the acts of third parties, unless the covered person or guardian signs an "agreement to repay the Administrator ... from any judgment or settlement received." Plaintiffs contend that Dora Faye Williams, pursuant to the language quoted above, signed such an agreement. Ms. Williams did sign a "Subrogation Agreement" where she conveyed to the plan any "rights of recovery that I might have against any third party who may be liable for the injury."[1] However, this is the language of a subrogation agreement; not a reimbursement agreement. While subrogation and reimbursement are similar in their effect, they are different doctrines. With subrogation, the insurer stands in the shoes of the insured. With reimbursement, the insurer has

a direct right of repayment against the insured. As a matter of logic and case law, a party can have one right, but not the other. *Weber v. Sentry Ins.*, 442 N.W.2d 164, 167 (Minn.Ct.App.1989) provides an extended explanation of the difference.

Under the subrogation agreement, plaintiffs clearly have only a right of subrogation, not reimbursement. Since the subrogation agreement granted rights of subrogation against third parties and failed to grant rights of reimbursement against the defendant, this court will observe the well-recognized rule of contract interpretation "expressio unius est exclusio alterius" which provides that mention in a contract of one or more things of a class implies the exclusion of all members not so expressed. *See* 17A *Am. Jur.2d Contracts* § 379 (1991).

Plaintiffs next contend that the plan itself grants a right to reimbursement, but it is clear that the provisions of the plan do no such thing. The plan states that:

> The Administrator has a right to recover in full the medical or disability expenses advanced regardless of whether [the covered person or guardian] actually signs the repayment agreement * * * and the Administrator right of recovery may be from the third party, any liability or other insurance covering the third party, the insured's own uninsured motorist benefits, underinsured motorist benefits or any medical pay or no-fault benefits.

The defendants are nowhere listed in this rather long recitation of available sources of recovery. Again the court will observe the rule that members of a class not mentioned are intended to be excluded.

Plaintiffs have no contractual right to reimbursement, and this court has no doubt that had the plaintiffs desired a direct right of reimbursement, they could have utilized language in the plan or in the subrogation agreement to that effect. For example, the plan could have required Ms. Williams to sign an agreement to "repay the employee benefits plan if and when [she] received pay-

---

1. It should be noted that Ms. Williams did not sign on her own behalf; she signed only on behalf of her dependent son. Therefore, she

would not be bound by the signed agreement in any case.

ment(s) for the injury." *Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606 (8th Cir.1994). Or the plan could have stipulated that it "requires that it be reimbursed for the benefits provided." *MedCenters Health Care v. Ochs*, 26 F.3d 865 (8th Cir.1994). Specific language like this can grant rights to reimbursement.

## VI. PLAINTIFFS HAVE AN EQUITABLE RIGHT TO REIMBURSEMENT

■ Although plaintiffs have no contractual right to reimbursement, this court holds that, under the circumstances of this case, it should create an equitable right of reimbursement when an insured settles with a tortfeasor and thereby destroys the insurer's subrogation interest. The general body of state common law favors the creation of such an equitable right. *See* Annotation, *Rights and remedies of insurer paying loss as against insured who has released or settled with third person responsible for loss*, 51 A.L.R.2d 697 (1957). And even in the absence of any subrogation agreement, equitable rights of subrogation and reimbursement are frequently granted by the courts.

> The doctrine of subrogation [and reimbursement] in insurance does not arise from, nor is it dependent upon, statute or custom or any of the terms of the contract; it has its origin in general principles of equity.... The right of subrogation rests not upon a contract, but upon the principles of natural justice.

16 Mark S. Rhodes, *Couch on Insurance 2d*, § 61:20 (Rev ed 1983).

By recognizing a cause of action that did not exist under the written plan or subrogation agreement, this court is reaffirming its holding that the federal common law of ERISA must utilize equitable principles where necessary to prevent injustice. *See Fitch v. Ark. Blue Cross & Blue Shield*, 795 F.Supp. 904 (W.D.Ark.1992). As this case makes clear, a blanket refusal to do so could lead to grave injustices.

This court's use of equitable principles to create common law causes of action in ERISA cases where appropriate is authorized by the Eighth Circuit's decision in *Slice v. Norway*, 978 F.2d 1045 (8th Cir.1992). In *Slice*, the Eighth Circuit wrote that "[w]hether there is a remedy under ERISA is a question of the district court in the first instance." *Id.* at 1047. In *Slice*, the Eighth Circuit refused to decide whether a common law cause of action for equitable estoppel exists under ERISA, because the district had not yet resolved the question independently.

It still remains for this court to determine the exact contours of plaintiffs' equitable right of reimbursement. Since the right is equitable rather than contractual, it is within this court's discretion to define the exact contours of the right as justice dictates.

■ In the opinion of this court, equitable considerations dictate that defendants receive full compensation for all their injuries and legal expenses before plaintiffs may exercise their right to reimbursement. *See Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 28, 834 S.W.2d 637 (1992) ("the equitable nature of subrogation [or reimbursement] is granted an insurer to prevent the insured from receiving a double recovery. Thus, ... the general rule is that an insurer is not entitled to subrogation unless the insured has been made whole for his loss"). Full compensation includes payment for legal expenses and court costs reasonably incurred in obtaining a settlement against the tortfeasor. "[T]he insured is generally entitled to recover these expenses prior to any recovery going to the insurer." *Couch on Insurance 2d* § 61:47.

Any other measure of recovery would leave defendants with uncompensated injuries. Allowing plaintiffs reimbursement only after defendants have been made whole will sufficiently protect plaintiffs' subrogation rights and prevent double recovery by defendants. Of course, if the right to reimbursement were contractually defined, the parties could expressly agree that reimbursement would be the first money out of the settlement monies with no deduction for attorneys fees and costs. *Provident Life & Accident Ins. Co. v. Linthicum*, 743 F.Supp. 662 (W.D.Ark.1990), *aff'd by*, 930 F.2d 14 (1991).

## VII. STATUTE OF LIMITATIONS

 The court notes that the limitations period for this action has not expired. In an ERISA action, the timeliness of a federal common law cause of action must be determined by reference to the appropriate state statute of limitations. The court is to decide which state statute of limitations is appropriate. *Anderson v. John Morrell & Co.*, 830 F.2d 872, 877 (8th Cir.1987); *Wang Labs. v. Kagan*, 990 F.2d 1126, 1129 (9th Cir.1993). As the parties did not brief the choice of law issue, and as this court sits in Arkansas, this court will determine the timeliness question by reference to the Arkansas statute of limitations.

 Plaintiffs equitable right to reimbursement did not accrue until plaintiffs settled on or about December 25, 1991. In Arkansas, the relevant limitations period is three (3) years for "actions founded on any contract or liability, expressed or implied." *Ark.Code Ann.* § 16–56–105 (1987). This court finds the equitable duty to reimburse is a liability implied by law with a three year limitations period that had not elapsed when plaintiffs filed this suit on March 16, 1993.

## VIII. HOW TO PROCEED WITH PLAINTIFFS' CLAIM

In fixing the amount of reimbursement due plaintiffs, this court must first determine the extent of the injuries suffered by the defendants and the amount of legal fees and court costs incurred to obtain the settlement. Only if the settlement fully compensates these injuries and expenses will reimbursement be available.

 Since defendants' tort claims were settled without a jury verdict, a trial will be necessary to determine whether the settlement fully compensates defendants' injuries and expenses. However, a jury trial will not be appropriate in this case as an action for reimbursement is essentially an action for restitution, "[h]istorically, an action for restitution seeks an equitable remedy for which there is no Seventh Amendment right to a jury trial." *Crews v. Central States, S.E. & S.W. Areas Pension Fund*, 788 F.2d 332 (6th Cir.1986).

Even if this were entitled an action for equitable subrogation, it would not merit a jury trial. "Subrogation is an established branch of equitable jurisprudence, being a creature of the courts of equity, and having for its basis the doing of complete and perfect justice, without regard to form, in all cases where the equities demand it." *Couch on Insurance 2d*, § 61:20.

This court therefore determines that there shall be a bench trial on the question of full compensation. If the settlement fully compensates defendants, then reimbursement will be proper. Other courts confronting this same situation have reached the same resolution. *See e.g. Sanders v. Scheideler*, 816 F.Supp. 1338 (W.D.Wis.1993), *aff'd*, 25 F.3d 1053, 1994 U.S.App. LEXIS 13049 (7th Cir. 1994) (court scheduled a bench trial to determine whether settlement amounted to full compensation).

Despite the precedent in favor of this resolution, "[w]e confess that at first blush it appears to be awkward and inappropriate to proceed with a lawsuit which has been settled for the purpose of determining the damages that would have ensued had the settlement not taken place. * * * It is unfortunate that the parties hereto, having settled the most serious questions of liability and damages amicably, could not have reached a compromise which could have avoided further litigation. * * * Be that as it may, the trial judge [is] confronted with a problem that require[s] judicial resolution. As unnecessary as the procedure [being] adopted should [be], we conclude that the methodology utilized [is] appropriate." *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis.2d 263, 316 N.W.2d 348 (1982).

## IX. CONCLUSION

This court is conscious of the fact that it is making federal common law in this case. In the absence of a well-developed body of precedent, it is left to the district courts "in the first instance" to develop a body of federal common law on subrogation and reimbursement in ERISA cases.

In this task, district courts have been instructed that they may look to state law, and

**914**

the various results produced by the fifty states over the last 200 years in dealing with insurance disputes will undoubtedly be helpful, but what the federal courts will do with this body of state law is unlikely to be uniform and predictable in the foreseeable short term.—"uniformity" being a primary goal of ERISA. This problem will not be solved simply by reliance on Restatements, A.L.R.'s, and Am.Jur.'s and other secondary sources; nor will it be solved simply by relying on general principles of law. Uniformity will be achieved slowly, as the district courts are corrected by the circuit courts who will in turn be corrected by the Supreme Court until, finally, "uniformity" will emerge.