Carla HAMILTON, Individually and as Personal Representative of the Estate of Billy Hamilton, and as next friend of Shynese Hamilton and Teneka Hamilton

v.

PILGRIM'S PRIDE EMPLOYEE GROUP HEALTH PLAN.

No. 5:97cv322.

United States District Court, E.D. Texas, Texarkana Division.

Nov. 13, 1998.

Nelson James Roach, David Neil Smith, Nix Law Firm, Daingerfield, TX, for plaintiffs.

James F Bullock, Godwin & Carlton, Levi Glenn McCathern, II, McCathern Wadlington & Mooty, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

Came on for consideration the cross-Motions for Summary Judgment in the above entitled cause. Having considered the Motions, the Responses, the Briefs, and the applicable law, the Court finds the following:

## I. BACKGROUND

The Plaintiffs were involved in a massive propane explosion in their home. As a result of the explosion, Plaintiffs, Carla Hamilton, Shynese Hamilton, and Teneka Hamilton, all suffered serious burn injuries which they survived. Billy Hamilton, the personal representative of whose estate is a Plaintiff in this action, died of his injuries.

The father of the injured children, Herschel Hamilton, worked for Pilgrim's Pride Corporation and provided medical benefits for the children through the Defendant, Pilgrim's Pride Employee Group Health Plan (hereinafter "Plan").[1] Shynese, Teneka, and Billy Hamilton were eligible for benefits from the Plan. Carla Hamilton was not. The Plan paid $136,815.18 in medical expenses on behalf of the children.

Plaintiffs sued WelchGas, Inc., d/b/a Daingerfield WelchGas and Strube Propane, Inc., in the District Court of Morris County, Texas, seeking to recover for their injuries. The father of the children was not a plaintiff in the lawsuit. The Plan was given notice of the lawsuit but did not participate in the lawsuit.

The Plaintiffs reached a settlement agreement in the state court action. In that agreement, WelchGas, Inc., agreed to pay the Plaintiffs the aggregate sum of $750,000. The Plaintiffs contend, and the Plan does not dispute, that the settlement is insufficient to make the Plaintiffs "whole" for their injuries and death. The state court settlement agreement, however, cannot be finalized because the Plan claims that it has a right of full reimbursement for payments made for the children's medical care costs.

---

1. At the time of the explosion, Herschel Ham- ilton and Carla Hamilton were divorced.

The Plaintiffs brought this declaratory judgment action in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a) in order for the Court to interpret the claims of the Plan. Motions for Summary Judgment were filed by both parties. The facts as cited above are uncontested.

## II. SUMMARY JUDGMENT STANDARD

The current standards for reviewing a motion for summary judgment were established in the Supreme Court's trilogy of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Matsushita Electrical Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.1992), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is appropriate when the movant can demonstrate that the evidence, including pleadings and affidavits, establishes that there are no genuine issues of material fact. FED.R.CIV.P. 56(c). Once the movant produces such evidence, the nonmovant must come forward with competent evidence that controverts the material facts of the claim at issue. *See Topalian*, at 1131.

Conclusory allegations are insufficient to create a fact question that would support or defeat summary judgment, and the parties may not rely merely on the allegations in their pleadings to create factual disputes. *Id.* A dispute about a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Simply stated, the Court must decide whether the result of submitting these matters to the trier of fact would be preordained. *See Society of Financial Examiners v. National Association of Certified Fraud Examiners*, 41 F.3d 223, 226 (5th Cir.1995).

In the present case, no genuine issue as to any material fact exists. The parties have expressed there is but one legal issue to be resolved: Does the "Make Whole" rule apply to the subrogation provision of the Plan such as to preclude recovery of payments by the Plan where, as here, the parties have stipulated that the settlement proceeds are insufficient to make the Plaintiffs whole? However, the Court finds that a separate dispositive issue must ultimately be addressed: Does the present ERISA health plan with conflicting language in the reimbursement and subrogation provisions of the Summary Plan Description and the health plan itself allow the Plan to recover money for benefits paid to a dependent of an employee?

## III. DISCUSSION

### A. Terms of the Health Plan

Both parties agree and the Court finds that the benefit plan at issue is an employee welfare benefit plan and shall be governed by federal law under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. Further, both parties agree and the Court finds that the Plan Administrator has express discretionary authority to interpret the benefit plan pursuant to the following language:

> The Plan administrator will resolve any factual dispute, giving due weight to all evidence available to it. The Plan Administrator will interpret the Plan and determine all questions arising in the administration, interpretation, and application of the Plan and its provisions. The Plan Administrator will have final discretionary authority to make such decisions and all such determinations shall be final, conclusive, and binding.

*Pilgrim's Pride Employee Group Health Plan* (1992) at 52; *Pilgrim's Pride Employee Group Health Plan* (1993) at 56. The Plan Administrator and the Plan Sponsor is Pilgrim's Pride Corporation.

The health benefit plan at issue contains the following language regarding rights of subrogation:

> *Rights of Subrogation* The Plan shall be subrogated to all rights of recovery which a Participant may have against any person, company or organization for any negligent or any willful act or omission resulting in an injury or illness for which benefits are paid under the Plan. By accepting payment of benefits under the Plan, the Participant assigns such rights of recovery to the Plan.

§ 11.02, *Pilgrim's Pride Employee Group Health Plan* (1992) at 50; § 11.02, *Pilgrim's Pride Employee Group Health Plan* (1993) at 54. A "participant" as defined by the health plan means "a Covered Employee, or Dependent who meets the requirements for eligibility as set forth in Article III and properly enrolls in the Plan." *Pilgrim's Pride Employee Group Health Plan* (1992) at 13; *Pilgrim's Pride Employee Group Health Plan* (1993) at 13. A "dependent" as defined in pertinent part of the plan means an unmarried child of a covered employee who is under attained age nineteen (19), provided, such child is not employed on a regular full-time basis. *Id.* at 5, respectively.

### B. Terms of the Summary Plan Description

The Pilgrim's Pride Summary Plan Description of the Medical and Life Insurance Benefit Plan for Employees of Pilgrim's Pride Corporation (hereinafter "SPD") contains the following language with regard to reimbursement:

> *Recovery From Third Parties* If you receive proceeds of any settlement or judgment as the result of another person being legally responsible for any injury or illness for which the Plan pays benefits, the Plan is entitled to a refund of the benefits it paid. You must hold in trust for the Plan all rights of action to recover damages from the responsible person. If so, the Plan will proportionately share in your expense of recovery. The Plan will also share in your recovery expense if you actually recover damages without being requested by the Plan to do so. However, payment of your recovery expenses will not exceed the amount recovered by the Plan through the recovery attempt, if such recovery attempt is initiated by ..you when not so requested in writing by the Plan.

*SPD*, at 3 and 22.

Pursuant to the SPD on page 4, "Certain important words are defined later in this booklet in a section entitled 'Definitions.' Reference to these definitions is essential to an understanding of the benefits provided under this Plan." In that Definition Section, a "Participant" as defined by the SPD means "an Eligible Employee covered under the Plan who agrees to pay any required contributions." *Id.* at 24. An "Eligible Employee" means all active full-time permanent employees and field foremen of the Company who are scheduled to work at least thirty (30) hours per week. *Id.* at 24. "Child," "family unit," and "eligible dependent" are not included in the SPD definition of participants or eligible employees. In the SPD, there are separate definitions for "eligible dependent," "child," "family unit," and "covered individuals." *Id.* at 24–25.

### C. Subrogation versus Reimbursement

The parties have briefed this Court with regard to the subrogation language of the health plan and the SPD. However, the Court classifies the above provisions as follows. Section 11.02 of the health plan is a classic example of contractual subrogation. In a subrogation situation, the subrogee can assert the rights of the subrogor. Section 11.02 allows the Plan in this case to be subrogated to all rights of recovery which a Participant may have against any person, company, or organization. Upon the acceptance of benefits, the Participant assigns such rights of recovery to the Plan. Therefore, upon the acceptance of benefits, the Plan "steps into the shoes" of the participant with respect to

any claims against the third party tortfeasor. In subrogation, the Plan's cause of action is against the third party. However, the SPD provision at issue is one of contractual reimbursement, not subrogation.[2] The SPD states that if "you" receive proceeds of any settlement or judgment, the Plan is entitled to a refund of the benefits it paid. With reimbursement, the insurer has a direct right of repayment against the insured.

### D. ERISA Definitions, Requirements, and Applicable Law

A "participant" as defined by 29 U.S.C. § 1002(7) means "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." Therefore, participant status according to the statute is limited to the employee who participates in the plan. Further, the Supreme Court has expressed its interpretation of participant: "[T]he term 'participant' is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment . . . .'" *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 118, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A "beneficiary" means a person designated by a participant, or by the terms of the employee benefit plan, who is or may become entitled to a benefit thereunder. 29 U.S.C. § 1002(8).

ERISA requires that the administrator of each employee benefit plan shall cause to be furnished to each participant covered under the plan and to *each beneficiary* who is receiving benefits under the plan a summary plan description. 29 U.S.C. §§ 1021(a), 1022(a), and 1024(b) (emphasis added).[3] Further, the summary plan description shall be sufficiently accurate and comprehensive to reasonably apprise plan participants of their rights and obligations under the plan. 29 U.S.C. § 1022(a); *see also Fallo v. Piccadilly Cafeterias, Inc.,* 141 F.3d 580, 583 (5th Cir. 1998); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 981 (5th Cir.1991); *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365 (8th Cir.1995), *cert. den. Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 516 U.S. 913, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995).

The SPD is interpreted as a whole. *Fallo,* 141 F.3d at 583. The SPD is binding, and if there is a conflict between the SPD and the terms of the policy, the SPD shall govern. *Fallo,* 141 F.3d at 583–84; *Hansen,* 940 F.2d at 982. Further, any ambiguity in the summary plan description must be resolved in favor of the employee and made binding against the drafter. *Hansen,* 940 F.2d at 982. The Fifth Circuit has also rejected the notion that the SPD should be interpreted in the light of the language of the Plan. *Fallo,* 141 F.3d at 584. It is the SPD and not the plan upon which the average bene-

---

**2.** *See FMC Medical Plan v. Owens,* 122 F.3d 1258, 1260 (9th Cir.1997) (stating plan language was one of contractual reimbursement and not contractual subrogation). *See also McIntosh v. Pacific Holding Company,* 992 F.2d 882, 884 (8th Cir.1993), *cert. den. McIntosh v. Pacific Holding Company,* 510 U.S. 965, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993) (stating, "We agree that the two paragraphs quoted above refer to different obligations— that the first paragraph creates a contractual obligation for reimbursement and that the second paragraph deals with a statutory or common-law right to subrogation."); and *Un-*

*isys Medical Plan v. Timm,* 98 F.3d 971 973 (7th Cir.1996) (stating, "reimbursement is a contractual right governed by ERISA . . . . While subrogation and reimbursement may have similar effects, they are distinct doctrines. 'As a matter of logic and case law, a party can have one right but not the other.' ") (citations omitted).

**3.** There is no evidence before the Court of when or if the Plaintiffs received a copy of the health plan or SPD prior to or during the time benefits were paid.

ficiary has relied, and the SPD most nearly represents the intention of the parties. *Id.*

■ The Plan's SPD contains language that the health plan document, not the SPD, is legally binding, and "While we have attempted to give a complete description of the plan here, the actual legal document will govern should any conflict arise between this summary and the legal document." *SPD,* at 4 and 37. However, as the *Hansen* court explained:

ERISA requires, in no uncertain terms, that the summary plan description be "accurate" and "sufficiently comprehensive to reasonably apprise" plan participants of their rights and obligations under the plan .... The rule that Continental urges would eviscerate this requirement. Under Continental's proposed rule the summary would not need to be accurate or comprehensive— if there was an ambiguity in the summary or an inaccuracy that put the summary in conflict with the policy, that ambiguity or inaccuracy would be cured by the policy itself. The result would be that before a participant in the plan could make any use of the summary, she would have to compare the summary to the policy to make sure that the summary was unambiguous, accurate, and not in conflict with the policy. Of course, if a participant has to read and understand the policy in order to make use of the summary, then the summary is of no use at all.

*Hansen,* 940 F.2d at 981–82 (citations omitted); *see also Hicks v. Fleming Companies, Inc.,* 961 F.2d 537, 542 (5th Cir. 1992) (stating, "If a document is to be afforded the legal effects of an SPD, *such as conferring benefits when it is at variance with the plan itself,* that document

should be sufficient to constitute an SPD for filing and qualification purposes." (emphasis added)); and *Fallo,* 141 F.3d at 583–84. This Court finds, as the *Hansen* court found, that the Plan's attempts to resolve conflicts and ambiguities between the SPD and the health plan with language in the SPD that the health plan is controlling is contrary to ERISA and federal law as interpreted by the Fifth Circuit.[4] The Court further finds that there are conflicts between the SPD and the language of the health plan. Accordingly, the wording of the SPD is controlling in this case.

■ When a plan, as in the present case, endows its administrator with discretionary authority to make eligibility determinations or construe the plan's terms, the decision of the administrator must stand unless there is an abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 108–16, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Spacek v. Maritime Association,* 134 F.3d 283, 292 (5th Cir.1998); *Sunbeam–Oster Co. Group Benefits Plan v. Whitehurst,* 102 F.3d 1368, 1373 (5th Cir.1996). In the present case, the Plan Administrator determined that the children were "participants" of the health plan of which their father was part by virtue of being alternate recipients under the Plan.[5] The Plan Administrator stated that pursuant to § 11.02 of the Plan, the Plan had a right of subrogation for those amounts paid or to be paid to or on behalf of the participants where benefits are paid under the Plan in respect of injuries or disease caused by the negligence or willful acts or omissions of third parties. The Plan Administrator's position was that the Plan was entitled to recover all amounts the Plan paid for benefit claims on behalf of the Plaintiffs in the

---

**4.** "To give effect to such a disclaimer would wholly undermine the rule that the statements of the summary plan description are binding. Indeed, if the insurer could escape the binding effect of the summary simply by adding a disclaimer to the summary, the insurer could escape the requirement of an accurate and

comprehensive summary plan description." *Hansen,* 940 F.2d at 982.

**5.** *See Letters of Russell D. Chapman, Counsel for Plan Administrator,* dated October 13, 1997, and November 4, 1997.

state-court action who were participants or covered dependents in the Plan.

Application of the abuse of discretion standard may involve a two-step process. *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637 (5th Cir.1992). First, a court must determine the legally correct interpretation of the plan. *Spacek,* 134 F.3d at 292. To do so, the Court must look to (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with the fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. *Wildbur,* 974 F.2d at 638.

Unlike the health plan subrogation clause relied upon by the Plan Administrator, the term "participant" is not used in the SPD reimbursement clause. Further, the definition of "participant" differs between the SPD and health plan. The SPD definition of "participant" is limited to eligible employee. The SPD reimbursement clause cited above simply uses the word "you." The SPD frequently uses the words "you" or "your" throughout the text of the SPD. For example, on page 2 of the SPD these words are used as follows: "you as an employee"; "your personal status—whether you're married, single, or have dependents"; "you and your family"; "your employee benefits program"; and "your status". On page 3 of the SPD, it states, "TO ALL EMPLOYEES .... This booklet has been written for you." The Court finds that the plain language reading of the SPD text taken as whole uses the word "you" to refer only to the employee or participant as defined by the SPD.[6] This Court finds that "eligible dependents," "child," "beneficiary," and "family unit" are not included in the definition of participants in the controlling SPD. Further, the terms "eligible dependents,"

"beneficiary," "child," and "family unit" are not expressed in the reimbursement clause of the SPD. As such, the Court finds that the administrator did not give a uniform construction to the Plan and SPD, and the administrator did not interpret the plan and SPD consistent with the fair reading. There is no indication from the Plan Administrator that the SPD and its differing language weighed into any analysis of the interpretation given. In addition, the envisioned costs anticipated by the Plan Administrator of not having a right of subrogation or reimbursement against the Plaintiffs should the interpretation follow the SPD is obvious. Therefore, the Court finds there existed, at the time of interpretation, anticipated costs resulting from the challenged definition of the subrogation and reimbursement provisions.

Although not controlling, *Provident Life and Accident Insurance Company v. Williams,* 858 F.Supp. 907 (W.D.Ark.1994) is persuasive, because like this case, it addresses an ERISA claim and contractual reimbursement rights. In *Provident Life,* Dora Williams, her minor son, and Ralph Williams were injured in a trailer fire. As a result of those injuries, the son was admitted to a burn institute where he suffered serious brain damage due to the institute's alleged malpractice. Provident Life paid for the medical and hospital bills for treating the injuries caused by the alleged malpractice. At some point, the institute settled with Mrs. Williams on the malpractice claims. Provident Life then brought subrogation action against Mrs. Williams to recover plan benefits that were paid under the ERISA plan. Both parties filed cross-motions for summary judgment.

Provident Life first claimed a contractual right of reimbursement under the health plan. Mrs. Williams had signed a "Subrogation Agreement" where she conveyed to

---

**6.** Throughout the text of the SPD the word "you" is used separate and distinct from references to family, dependents, and beneficiaries. The word "you" is primarily used in conjunction with Pilgrim's Pride employee(s).

See *SPD,* at 19 (*"Effective Date of Coverage For Employees* ... You may become covered .... You have completed ....." versus *"Effective Date of Coverage For Dependants* ... Generally, your dependents ....")

Provident Life any rights of recovery against the third party. As the district court noted, "[T]his is the language of a subrogation agreement; not a reimbursement agreement. While subrogation and reimbursement are similar in their effect, they are different doctrines." *Provident Life*, 858 F.Supp. at 911. The district court then noted that under the subrogation agreement, Provident Life clearly had only a right of subrogation, not reimbursement. *Id.* As such, Provident Life could only "stand in the shoes" of Mrs. Williams against third parties, but the agreement failed to grant rights of reimbursement against her. *Id.*

Provident Life next contended that the plan itself granted a right to reimbursement. The express language relied upon by Provident Life stated that recovery may be from the "third party, any liability or other insurance covering the third party, the insured's own uninsured motorist benefits, underinsured motorist benefits or any medical pay or no-fault benefits." *Id.* However, as the district court noted, "[Mrs. Williams, Ralph Williams, and the Guardian of the son's estate] are nowhere listed in this rather long recitation of available sources of recovery. Again the court will observe the rule that members of a class not mentioned are intended to be excluded." *Id.* The district court then stated, "[Provident Life has] no contractual right to reimbursement, and this court has no doubt that had [Provident Life] desired to direct right of reimbursement, [it] could have utilized language in the plan or in the subrogation agreement to that effect." *Id.*

 Similarly, this Court finds in the present case that the health plan provides for only a right of subrogation through "participants" against third parties. Pursuant to the SPD, the Plaintiffs are not "participants" as defined by the SPD. Further the Court finds that the SPD reimbursement provision is limited to reimbursement from "you" the employee. Therefore, the Court finds that the Plan Administrator did not use the legally correct interpretation of the SPD and erred in his interpretation of the SPD and Plan. Accordingly, the Court interprets the reimbursement provision of the SPD to confer a right of reimbursement to the Plan against only its employees who receive proceeds of any settlement or judgment from a third party for any injury or illness for which benefits were paid. Dependents, children, and broadly construed "covered individuals" are simply not stated in the SPD provision.[7] Using the SPD definition of "participant," the same result occurs when applied to the subrogation provision in the health plan which states the Plan shall be subrogated to all rights of recovery which a participant may have. Either the health plan provision is limited to only a right of subrogation and not reimbursement, or the health plan provision simply doesn't cover anyone other than a "participant" as defined by the SPD.

 If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. *Wildbur*, 974 F.2d at 637. To do so requires the court to look at three factors:

(1) the internal consistency of the plan under the administrator's interpretation;

---

7. *See McIntosh*, 992 F.2d at 883 (language in plan stated reimbursement from "Covered Person"); *Provident Life*, 858 F.Supp. at 907 (defendants not listed in available sources of recovery); *FMC Medical Plan*, 122 F.3d at 1259–60 (reimbursement, not subrogation, language as to "myself and dependent(s), to reimburse ..."); and *Member Services Life Insurance Company v. American National Bank and Trust Company of Sapulpa*, 130 F.3d 950, 956 (10th Cir.1997), *cert. den. Member Services Life Insurance Company v. American National Bank and Trust Company of Sapulpa*, — U.S. —, 118 S.Ct. 1843, 140 L.Ed.2d 1093 (1998) (ERISA welfare plan did not contain a provision permitting the recoupment of benefits from funds obtained by a beneficiary from a third party tortfeasor and retroactive amendment allowing such recoupment held invalid.).

(2) any relevant regulations formulated by the appropriate administrative agencies; and

(3) the factual background of the determination and any inference of lack of good faith.

*Wildbur,* 974 F.2d at 638. Although the fact that an administrator's interpretation is not the correct one does not itself establish that the administrator abused his discretion, when his interpretation of a plan is in direct conflict with express language in a plan, the action is a very strong indication of arbitrary and capricious behavior. *Wildbur,* 974 F.2d at 638.[8]

In looking at whether the internal consistency of the plan under the administrator's interpretation is maintained, the Court finds that the administrator's interpretation makes the SPD language meaningless. No evidence presented suggests that the Plan Administrator considered the language of the SPD. The SPD's use of definitions, its language alerting employees to carefully read those definitions, and its

clear omission of the defined words "eligible dependent," "family unit," and "child" from the SPD reimbursement provision, establishes that the interpretation of the administrator was in direct conflict with the express language of the SPD. Further, the term "participant" as defined by the health plan and as interpreted by the administrator is in direct conflict with the definition of "participant" in the SPD. Not only would an employee have to read the subrogation provision of the health plan and the reimbursement provision of the SPD, but the employee would also have to resolve the conflict between the definitions of "participant" in both the SPD and the health plan in order to mirror the interpretation provided by the administrator.[9] Clearly this violates any and all principles established by the Fifth Circuit and the laws governing ERISA as to the weight and policy afforded to the SPD and its purpose of being the document upon which the employee can rely.[10]

8. *See also Edwards v. State Farm Mutual Automobile Insurance Co.,* 851 F.2d 134, 136 (6th Cir.1988) (stating, "[I]n [*Rhoton v. Central States,* 717 F.2d at 989–991] the court relied upon a summary provision to demonstrate that the trustees' interpretation (founded upon the full plan) was 'arbitrary and capricious.' ").

9. The Court finds that the SPD is in clear conflict with the health plan and as such has relied upon the plain language of the SPD. However, at the very least the Court recognizes a great ambiguity in the language of the SPD with regard to the word "you" when there are clearly defined terms in the SPD which the Plan could have used in the SPD subrogation provision. The Fifth Circuit has concluded:

> [T]he ambiguity in the summary plan description must be resolved in favor of the employee and made binding against the drafter. Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing

document. Accuracy is not a lot to ask. And it is especially not a lot to ask in return for the protection afforded by ERISA's preemption of state law causes of action— causes of action which threaten considerably greater liability than that allowed by ERISA.

*Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 939 (5th Cir.1993) (quoting, *Hansen,* 940 F.2d at 982).

10. *See Lutheran Medical Center v. Contractors Health Plan,* 25 F.3d 616, 621 (8th Cir.1994) (stating, "We next consider whether the Board's interpretation renders any Plan language internally inconsistent or meaningless .... To allow the trustees to interpret the exclusion to deny Rodriguez's claims would create an inconsistency between the Plan and Summary Plan Description."). The Eighth Circuit has also looked at whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute. *Cooper Tire,* 48 F.3d at 371 (stating, "First, the Plan conflicts with the ERISA requirement that the summary plan description (SPD) be 'sufficiently accurate and comprehensive to reasonably apprise [the] participants and beneficiaries of their rights and obligations under the plan.' " (quoting 29 U.S.C. § 1022(a) and finding that Cooper

The Court is not aware of any administrative agencies relevant to the present case. Therefore, an analysis of the second element is not necessary. However, the Court is concerned with the factual background concerning the interpretation and any inference of good faith. On June 2, 1993, the explosion which injured the Plaintiffs occurred. From the evidence provided to the Court, the Plan began paying benefits on behalf of the Plaintiffs on or around June 29, 1993. On June 2, 1995, the Plaintiffs filed their Original Petition against Welchgas, Inc., and Strube Propane, Inc. The Plan was provided notice of the lawsuit and an opportunity to intervene in the state suit. However, the Plan did not intervene in, nor was it joined as a party to, the Plaintiffs' actions against the gas companies. In fact, by letter the Plan informed the Plaintiffs, "We have informed you that the Plan does not intend to intervene in the captioned case ...." *See Letter of Russell D. Chapman, Counsel for Plan Administrator,* dated October 13, 1997. The father of the Plaintiff children, and the "participant" as defined by the SPD of the Plan, was not a plaintiff in the lawsuit either. The Plan made no demands upon the third-party tortfeasor in the state court action for payment for the medical expenses of the children. As earlier stated, the envisioned costs anticipated by the Plan Administrator of not having a right of subrogation or reimbursement against the Plaintiffs in this case should the interpretation follow the SPD is obvious. Yet no interpretation by the Plan Administrator was given justifying the interpretation on the ground of its benefit to the class of all participants and beneficiaries.[11]

In sum, the Court finds the Plan Administrator's interpretation of the SPD and health plan subrogation provisions to be an abuse of discretion. Reasonably interpreted, the SPD provides the Plan reimbursement rights only with respect to "you" the employee if "you receive proceeds of any settlement or judgment as the result of another person being legally responsible for any injury or illness for which the Plan pays benefits ...." Mr. Herschel Hamilton received no proceeds in the state court action. The reimbursement provision of the SPD does not refer to beneficiaries, dependents, or anyone other than "you" the employee, which this Court views as a "participant" as defined by the SPD. In addition, "participant" as defined by the controlling SPD and when applied to § 11.02 of the health plan, clearly limits subrogation through only the participating employee. Ambiguities or conflicts in an ERISA plan must be construed against the drafter and in favor of the insured.[12] The Court finds that under the terms of the SPD and the health plan itself, the Plan has no right to subrogation against the Plaintiffs. Any rights to subrogation by the Plan exist through the employee or participant as defined by the SPD. Further, the Court finds that under the plain language reading of the SPD, the Plan has no right of reimbursement against the Plaintiffs. At the time the benefits at issue were paid by the Plan, the Plaintiffs had a contractual right to payment "unburdened by any right to subrogation or recoupment." *Member Services Life Ins. Co.,* 130 F.3d at 958.

There is no need for this Court to explore whether the Fifth Circuit would ap-

---

Tire's SPD failed to inform participants that Cooper Tire will claim a right to written consent or first-dollar recovery on all the participant's claims against a liable third party)).

**11.** *See Wildbur,* 974 F.2d at 638 (stating, "[A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or benefi-

ciaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.") (quoting, *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1566–67 (11th Cir.1990)).

**12.** *Hansen,* 940 F.2d at 982; *see also Barnes v. Independent Auto. Dealers of California,* 64 F.3d 1389, 1393 (9th Cir.1995).

ply the "make whole" doctrine. Because the Plan has no subrogation or reimbursement right against the Plaintiffs, exploration as to what type of subrogation interest exists is unnecessary.

The Plan has relied upon *Sunbeam–Oster Company Inc. v. Whitehurst*, 102 F.3d 1368 (5th Cir.1996), throughout its briefing, and the Court is mindful of the case. However, the *Sunbeam* case is distinct from the present set of facts and issues. Whitehurst and his wife were employees of the Sunbeam company. Although Whitehurst was paid benefits as a dependent under his wife's employee coverage plan, the SPD in that case notified him as an "employee" of the right of subrogation by the plan. In addition, Whitehurst signed a reimbursement/subrogation provision in a standard form sent to him prior to the payment of any benefits. Finally, Whitehurst's attorney informed the health plan of an imminent settlement with the third party and requested itemized medical expense statements so that "he might 'protect [the Plan's] interest." *Sunbeam*, 102 F.3d at 1370. These facts are wholly different than the present case.

The sole legal issue determined by the Court of Appeals in the *Sunbeam* case was what type of subrogation interest existed in the claims of Sunbeam against Whitehurst. The *Sunbeam* court noted that the SPD is a document which is to be written in a manner calculated to be understood by the average plan participant. As such, the *Sunbeam* court stated that simply because the SPD did not contain technical wording on a fine point of subrogation law did not mean the SPD was silent or ambiguous on the matter. However, there existed no direct conflicts in the language of the SPD and a health plan. Further, the present case does not deal with a lack of technical wording on fine points of law as to specific subrogation or reimbursement rights. The present case finds an SPD reimbursement provision as to "you" the employee, a plan subrogation provision as to a participant, SPD definitions contrary to health plan definitions, an SPD emphasis as to those certain definitions, and omission of these jargon-free and easy to understand definitions in the reimbursement clause. Had the *Sunbeam* district court and the Fifth Circuit had a factual pattern similar to the present case, this Court is confident the result it has reached would have occurred.

The Plan has argued that there is no way to apprise small children and infants in thousands or hundreds of thousand of benefit plans across the country as to the terms of the employee benefit plan. The Court disagrees. The process requires only two simple tasks. First, supply all participants and beneficiaries who are to be paid benefits with a copy of the SPD as ERISA requires. Next, the SPD should be adequately comprehensive and adequate. In the present case, the SPD reimbursement provision could easily be modified by adding the terms participant, beneficiary, eligible dependent, or covered child as they are defined in the SPD. Further, the conflict in definitions between the SPD and the health plan could be resolved.

### E. Attorneys' Fees

 ERISA provides that the court in its discretion may allow a reasonable attorney's fee and costs to either party. 29 U.S.C. § 1132(g)(1). The Courts finds the awarding of attorneys' fees in the present case is not appropriate in light of the standards identified by the Fifth Circuit in ERISA cases. Accordingly, that portion of Plaintiffs' Motion is DENIED.

### IV. ORDER

This matter is before the Court for consideration of cross-motions for Summary Judgment filed by the Plaintiffs and the Defendant. The Court having thoroughly reviewed this matter, having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised, it is hereby

ORDERED, ADJUDGED, AND DE-CREED that Plaintiffs' Motion for Summary Judgment shall be GRANTED. It is further

ORDERED that Defendant's Motion for Summary Judgment is DENIED. It is further

ORDERED that Declaratory Judgment is entered in favor of the Plaintiffs in that the Defendant has no right of subrogation or reimbursement from the Plaintiffs. This is a final and appealable Order, and there is no just cause for delay.