52 A.3d 241

**Lillian FRAZIER, Appellant**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD
(BAYADA NURSES, INC.), Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 2011.

Decided Sept. 28, 2012.

John Paul Dogum, Martin, Banks, Pond, Lehocky & Wilson, Philadelphia, Michael Alan Hamilton, Nelson, Levine, deLuca & Horst, L.L.C., Blue Bell, for Lillian Frazier.

James Christopher Froelich, Wyomissing, for Appellant Amicus Curiae, Pennsylvania Public Transportation Association.

Colin Meneely, Pittsburgh, for Appellant Amicus Curiae, Port Authority of Allegheny County.

John Anthony Costalas, John F. Hayes II, Blue Bell, Cipriani & Werner, P.C., for Bayada Nurses, Inc.

Amber M. Kenger, PA Department of Labor and Industry, Richard C. Lengler, Workers' Compensation Appeal Board, Harrisburg, for Workers' Compensation Appeal Board.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.[1]

In July, 1993, the General Assembly significantly amended the Workers' Compensation Act[2] with sweeping legislation known commonly as Act 44.[3] A portion of Act 44, namely Section 23, provides as follows:

The Commonwealth, its political subdivisions, their officials and employees acting within the scope of their duties shall enjoy and benefit from sovereign and official immunity from claims of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits.

We granted allowance of appeal in this case to determine whether the immunity provisions of Section 23 of Act 44 apply to "subrogation and/or reimbursement claims sought against an employee who has entered into a third[-]party settlement with a Commonwealth [p]arty such as Southeastern Pennsylvania Transportation Authority ('SEPTA')." *Frazier v. WCAB (Bayada Nurses, Inc.)*, 607 Pa. 373, 6 A.3d 1288 (2010) *(per curiam )*. For the reasons that follow, we hold that the portion of Section 23 of Act 44, which provides that government shall "benefit from sovereign and official immunity from claims of subrogation or reimbursement from a claimant's tort recovery," bars any claim made by the employer, Bayada Nurses, Inc., for the recoupment of workers' compensation benefits it paid in this case. Accordingly, we reverse the order of the Commonwealth Court.

1. This matter was reassigned to this author.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–2708.

3. Act of July 2, 1993, P.L. 190, No. 44.

On March 1, 2005, Lillian Frazier (Claimant) fractured her right ankle when a SEPTA-operated bus, on which she was a passenger, was involved in a motor vehicle accident. At the time of the accident, Claimant was employed by Appellee, Bayada Nurses, Inc., and the accident occurred in the course and scope of Claimant's employment with Bayada Nurses. Accordingly, Claimant filed a claim for workers' compensation, which was ultimately granted by a workers' compensation judge.

Thereafter, on May 11, 2006, Claimant filed a third-party lawsuit against SEPTA, contending that it was liable for the injuries she sustained in the bus accident. During the pendency of that action, Bayada Nurses' workers' compensation insurer, Specialty Risk Services, Inc.,[4] filed notice of its intent to recoup the benefits it paid to Claimant from any award received from the third-party lawsuit pursuant to Section 319 of the Workers' Compensation Act, *as codified* 77 P.S. § 671 (hereinafter, "Section 319").[5] Eventually, on July 26, 2007,

4. For ease of discussion, Bayada Nurses, Inc. and Specialty Risk Services, Inc., will be referred to collectively as "Bayada Nurses."

5. Section 319, entitled "Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award," provides as follows:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event

Claimant settled her lawsuit with SEPTA for $75,000. As part of the settlement, SEPTA agreed that it would "defend, indemnify and hold Claimant harmless with respect to any claim, suit, petition or other action brought against Claimant ... for payment of [the] workers' compensation lien" filed by Bayada Nurses. Settlement Agreement between Claimant and SEPTA, Jul. 26, 2007 at 1, *found at* Reproduced Record (R.R.) 13a. Bayada Nurses filed a claim petition and asserted its Section 319 rights in the amount of $47,351.93, which equaled the amount of workers' compensation benefits Bayada Nurses had paid Claimant up to the time of the settlement agreement. Claimant opposed the petition, claiming that Bayada Nurses was attempting to collect from money paid to Claimant by SEPTA and that SEPTA was immune from claims of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits under Section 23 of Act 44.

The workers' compensation judge (WCJ) presiding over the claim petition agreed with Claimant, finding that the immunity provided by Section 23 applies both to subrogation claims asserted by an employer against a governmental entity and reimbursement from settlement proceeds a government party pays to an injured employee. Otherwise, according to the WCJ, the immunity provisions would be rendered useless.

Bayada Nurses appealed to the Workers' Compensation Appeal Board (WCAB), which reversed, holding that Section 23, along with the sovereign, political subdivision, and official immunity provisions contained within the Judicial Code only extend to direct actions for recovery against a governmental entity. As Bayada Nurses' claim petition, in the WCAB's view, did not equate to a direct suit between an individual and a governmental entity, it opined that Section 23 was not applicable to the lien filed by Bayada Nurses.

of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board.
77 P.S. § 671.

Claimant appealed to the Commonwealth Court, a panel of which affirmed in an unpublished decision. The panel noted that it had recently decided *Fox v. WCAB (PECO Energy Co.)*, 969 A.2d 11 (Pa.Cmwlth.2009), which, in the panel's view, concerned the identical issue presented by Claimant, namely, whether Section 23 barred a claim for subrogation or reimbursement by Bayada Nurses against settlement proceeds paid by SEPTA to Claimant. In *Fox,* an employee of the PECO Energy Company sustained an ankle injury in the course of his employment, and subsequently sued the City of Philadelphia for damages related thereto. The employee and City reached a settlement agreement for $150,000 that included an indemnification clause identical to the one presented in this case. When PECO attempted to subrogate against, or recover reimbursement from, the settlement, the employee averred that Section 23 barred the claim. The Commonwealth Court rejected the employee's contention, noting that Section 319 provides for an absolute and automatic right to subrogation. *Id.* at 13 (citing *Thompson v. WCAB (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001)). With that background, the Commonwealth Court in *Fox* further expounded: "Because [PECO] is seeking subrogation from [the employee] for the $150,000 he received from the City, not from the City itself, Section 23 of Act 44 does not foreclose [PECO] from enforcing its Section 319 . . . reimbursement rights." *Id.* at 14.

Through this appeal, Claimant attempted to have the Commonwealth Court revisit the *Fox* decision, contending that if she were required to reimburse Bayada Nurses from the settlement proceeds, "she would be merely a conduit for money passing from SEPTA to [Bayada Nurses], which Section 23 forbids." *Frazier v. WCAB (Bayada Nurses)*, Docket No. 905 C.D.2009, Mem. Op. at 4, 2009 WL 8658374 (Pa. Cmwlth., Sept. 17, 2009). The Commonwealth Court disagreed, declined to revisit *Fox,* found the decision therein controlling, and accordingly affirmed the decision of the WCAB. Claimant subsequently filed a petition for allowance of appeal with this Court, which we granted. *See supra* p. 2.

 This case concerns the interpretation of two pieces of legislation: Section 319 of the Workers' Compensation Act and Section 23 of Act 44. As statutory interpretation implicates a pure question of law, this Court's standard of review is *de novo* and scope of review is plenary. *Dep't of Labor & Indus. v. WCAB (Crawford & Co.)*, 611 Pa. 10, 23 A.3d 511, 514 (2011). When examining a statute, we are bound by its plain language; accordingly, we should not insert words into the Act that are plainly not there. *Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Employees' Ret. Bd.*, 580 Pa. 610, 863 A.2d 432, 436, 439 (2004); 1 Pa.C.S. § 1921(b). Additionally, this Court should construe statutes to give effect to all of their provisions, and should not ignore language nor render any portion of the statute superfluous. *Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 607 Pa. 104, 4 A.3d 610, 622 (2010); *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662, 664 (1983); 1 Pa.C.S. § 1921(a). Should the words of a statute not be explicit, this Court may ascertain the intent of the General Assembly by considering various factors, including:

(1) The occasion and necessity of the statute.

(2) The circumstances under which it was enacted.

\* \* \*

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

\* \* \*

1 Pa.C.S. § 1921(c)(1)-(2), (4)-(7). Further, when interpreting a statutory provision, we presume that the General Assembly did not intend an absurd or unreasonable result, intended the entire statute to be effective, and purposely placed the public interest above any private interest. *Id.* § 1922(1), (2) & (5). With these precepts in mind, we turn to the parties' arguments.

Claimant focuses on the plain language of Section 23 of Act 44, specifically the portion of the statute which provides that

government shall "benefit from sovereign and official immunity from claims of subrogation or reimbursement from a claimant's tort recovery." Concentrating on the disjunctive nature of Section 23, Claimant argues that the statute provides for immunity in two separate situations: (1) a direct suit against a governmental entity for subrogation; and (2) scenarios such as presented here and, indeed, in *Fox*-claims for reimbursement from a tort recovery or settlement received by a workers' compensation claimant from a governmental entity. According to Claimant, to interpret Section 23 as not allowing immunity in the factual circumstance presented in this case "renders Commonwealth entities immune from direct claims for subrogation ... while requiring them to factor the value of such claims into their settlements with tort claimants, [thus leading] to a manifestly absurd result which frustrates the purpose behind granting such immunity." Brief of Claimant at 14. Put differently, Claimant contends that the purpose of Section 23 immunity, and, indeed, sovereign immunity in general, is negated if a governmental entity will have to include in a settlement agreement amounts equal to subrogation liens in recognition that an employer may merely wait for a claimant to receive funds from a governmental entity and then demand reimbursement for paid compensation.[6]

Bayada Nurses counters by emphasizing that this Court, for over three decades, has identified three underlying purposes for the absolute and automatic right to subrogation and reimbursement in workers' compensation:

(1) to prevent double recovery for the same injury by the claimant;

(2) to ensure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party; and

6. To this end, Claimant further argues that we should not blindly follow the *Fox* decision as the Commonwealth Court here did, because the *Fox* opinion did not contemplate the statutory language argument forwarded by Claimant instantly. Rather, a careful reading of *Fox* reveals that the Commonwealth Court in that case focused exclusively on the purpose of subrogation in workers' compensation.

(3) to prevent a third party from escaping liability for his negligence.

*Dale Mfg. Co. v. WCAB (Bressi)*, 491 Pa. 493, 421 A.2d 653, 654 (1980). Bayada Nurses argues that, should we accept Claimant's argument herein, all three of these purposes will be nullified: Claimant will receive a double recovery; Bayada Nurses will be forced to pay compensation for an injury that was not its fault; and SEPTA will escape liability. To that end, Bayada Nurses further contends that the entire settlement is an exercise in bad faith by SEPTA and Claimant to avoid application of the mandatory provisions of Section 319: "Respectfully, it is hopefully abundantly clear to this Court that whatever effort and subterfuge [C]laimant and SEPTA undertook to artificially describe what was and what was not being paid with the $75,000.00 check is not binding on the employer, nor on this Honorable Court." Brief of Bayada Nurses at 9.

Bayada Nurses then focuses on what it believes is the plain language of Section 23 of Act 44, and explains that nowhere in Section 23 has the General Assembly allowed a claimant, as opposed to a governmental entity, to benefit from sovereign immunity; yet, in Bayada Nurses' view, that is what Claimant in this case is attempting to do. Bayada Nurses argues that Section 23 is not even implicated by this case because SEPTA is no longer involved in the litigation—it has paid its settlement monies—and the action for reimbursement is solely between Claimant and Bayada Nurses.[7] It somewhat incoherently concludes that Section 23 has a unitary application: if, for some reason, an employer cannot recover already paid sums from its injured employee, the employer cannot sue the government agency for that money.

The plain language arguments forwarded by both parties illustrate the ambiguity that exists within Section 23 of Act 44. On one hand, Bayada Nurses argues that the factual situation

---

7. Bayada Nurses ignores the agreement between Claimant and SEPTA requiring it to indemnify Claimant for any monies recovered from her by Bayada Nurses. We presume Bayada Nurses discards this provision because in its view it was the product of collusion, which we should accordingly reject. *See also infra* note 11.

presented by Claimant and SEPTA in this appeal is not contemplated by the plain language of Section 23 of Act 44. On the other hand, Claimant logically contends that the clause of Section 23 of Act 44 providing for immunity from any claims of reimbursement from a claimant's tort recovery is rendered meaningless by the decision of the Commonwealth Court. Accordingly, we must resort to the tools of statutory construction and interpretation to resolve this conflict.

Act 44 of 1993 enacted wide-ranging amendments to the Workers' Compensation Act. Relevant to this appeal, the General Assembly included within Act 44 two provisions concerning workers' compensation subrogation: Section 23, the subject of this case, and Section 25(b), which reinstated the rights of all employers/insurers to seek workers' compensation subrogation and reimbursement in cases involving the Motor Vehicle Financial Responsibility Law.[8] In other words, the legislature, with Section 25(b), reestablished the comprehensive right of the employer/compensation insurer to subrogation as part of an extensive legislative enactment designed to "reduce the cost of [workers' compensation] in order to fix our economy and save jobs." House of Representatives Journal, Mar. 30, 1993, at 543 (comments of Rep. Gladeck). Indeed, as reflected in the debates on what was then Senate Bill No. 1 of 1993, the overriding purpose of Act 44 was to lessen the burden on private corporations in the face of the loss of approximately 140,000 jobs in the Commonwealth during the preceding years. *See id.* at 541 (comments of Rep. Daley).

The right to subrogation and reimbursement has been described as absolute and automatic, *see Thompson,* 781 A.2d at 1151, and the General Assembly expanded this right with Section 25(b) of Act 44. Sovereign immunity, however, is just as fundamental pursuant to Article I, Section 11 of the Pennsylvania Constitution, as only the General Assembly may waive the immunity of the Commonwealth upon duly enacted legislation. 1 Pa.C.S. § 2310; *see also Commonwealth v. Berks County,* 364 Pa. 447, 72 A.2d 129, 130 (1950) ("a State

---

**8.** Prior to the passage of Act 44, subrogation and reimbursement were not available in MVFRL cases. *See* 75 Pa.C.S. § 1720 editors' notes.

may not be sued without its consent"); *Bell Tel. Co. of Pa. v. Lewis,* 313 Pa. 374, 169 A. 571, 571 (1934) ("That the state may not be sued without its consent is fundamental."); *Marino v. Seneca Homes, Inc.,* 63 Pa.Cmwlth. 534, 439 A.2d 1287 (1981).[9] Thus, in 1993 when the General Assembly was expanding the "absoluteness" of subrogation and reimbursement in workers' compensation, it specifically provided for no "subrogation or reimbursement from a claimant's tort recovery" in cases involving the Commonwealth or its political subdivisions with the enactment of Section 23 of Act 44. In other words, despite a backdrop of making Pennsylvania more business-friendly, the General Assembly in its wisdom concomitantly created a lone exception to the comprehensive right of subrogation and reimbursement: by prohibiting it in tort cases involving the Commonwealth, its political subdivisions, and the agencies, officials, and employees thereof.

█ Further, the legislature's contemplation of subrogation *and* reimbursement in Section 23 of Act 44 is substantial because, while similar in theory, they are distinct in application, such that the phrasing contained in Section 23 is not just an exercise in semantics. In subrogation, the "insurer stands in the shoes of the insured" in attempting to recover what is rightfully owed to it from a third-party tortfeasor. *Provident Life & Accident Ins. Co. v. Williams,* 858 F.Supp. 907, 911 (W.D.Ark.1994); *see also Jones v. Nationwide Prop. & Cas. Ins. Co.,* 32 A.3d 1261, 1270 (Pa.2011). In workers' compensation parlance, the insured, of course, is the injured employee. Thus, the employer/compensation insurer may step into the shoes of the claimant to recover directly against a third party

9. There was a time when this Court disagreed with this precept, and therefore abolished sovereign immunity from the common law and abrogated any recognition of it under the Pennsylvania Constitution. *See Mayle v. Pa. Dep't of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). Little more than two months after the *Mayle* decision, however, the General Assembly unequivocally reaffirmed the absoluteness of sovereign and official immunity under Article I, Section 11, except as provided by statute. *See* Section 1 of Act 152 of Sept. 28, 1978, P.L. 788, *as codified at,* 1 Pa.C.S. § 2310; *see also* 42 Pa.C.S. §§ 8521–8527, 8541–8542, 8545–8550 (providing for sovereign, political subdivision, and official immunity, respectfully, and the exceptions thereto).

tortfeasor, which here would be the Commonwealth and its subsidiaries, an action clearly prohibited by Section 23 of Act 44.

■ A reimbursement proceeding, however, occurs only after a settlement or award has been garnered by the injured employee from the third-party tortfeasor, which is the factual scenario we are faced with instantly. In such circumstances, the "insurer has a direct right of repayment against the insured," *Williams,* 858 F.Supp. at 911; *see also* 16 LEE R. RUSS, COUCH ON INS. § 222.82 (3d ed.2011), *i.e.,* the employer/compensation insurer must bring an action against the employee to recover any monies paid as part of the workers' compensation scheme.[10]

■ This case, therefore, emphasizes the conundrum that results from the statutory imperative that the Commonwealth shall enjoy the "benefit of sovereign and official immunity from claims of reimbursement from a claimant's tort recovery." It begs the question, if reimbursement concerns actions between employees and employers, what was the legislature's intent in including the reimbursement clause in Section 23 of Act 44? The answer, in our view, is demonstrated in situations such as that presented here: where the Commonwealth structures a settlement that does not include workers' compensation benefits within the agreement, and agrees to defend and hold harmless the claimant for any claims of subrogation or reimbursement.[11]

10. While not directly implicated by this case, we note that normally in subrogation, the right of action lies in the injured employee, and the action for subrogation against the third-party tortfeasor is brought in the employee's name. Nonetheless, an "employer ... is not to be denied his right of suit [in subrogation] because the employee does not sue [the third-party tortfeasor], but may institute the action in the latter's name." *Scalise v. F.M. Venzie & Co.,* 301 Pa. 315, 152 A. 90, 92 (1930). In either circumstance, it would appear that the subrogation suit would be precluded by Section 23. Regardless, this case only concerns reimbursement which, as noted *supra,* is an independent cause of action available to an employer/compensation insurer and brought against solely the injured employee after he receives an award or settlement from the third-party tortfeasor.

11. As noted, *supra* note 7, Bayada Nurses, in rejecting the viability of the settlement agreement, baldly contends that the agreement, which

■ Reading Section 23 of Act 44 in this manner accomplishes several goals. First, it gives effect to all the provisions of this Act without ignoring the plain language of the statute, which are primary objects of statutory interpretation. *See* 1 Pa.C.S. § 1921(a)(b); *Pa. Sch. Bds. Ass'n,* 863 A.2d at 436, 439; *Bd. of Revision,* 4 A.3d at 622. Second, a primary purpose of sovereign immunity, protection of the public fisc, is satisfied, as the Commonwealth and its political subdivisions can enter into reduced settlement agreements and "benefit" from sovereign and official immunity. *Cf. Dean v. Commonwealth, Dep't of Transp.,* 561 Pa. 503, 751 A.2d 1130, 1132 (2000) ("Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed."). Otherwise, as aptly observed by *amicus curiae* the Pennsylvania Public Transportation Association (PPTA), "Section 23 [would be rendered] impossible to execute, because employers would simply forego direct claims against Commonwealth agencies and simply assert subrogation liens against claimants' tort recoveries," making the grant of sovereign and official immunity by Section 23 of Act 44 illusory and rendering the statute superfluous. Brief of PPTA at 8. Third, so long as the settlement agreements are struc-

expressly limited the settlement to non-workers' compensation benefits and provided for indemnification of Claimant by SEPTA, was drafted and executed in bad faith and subterfuge by SEPTA and Claimant. We first note that there is no basis in the record for this unfounded allegation. Moreover, the workers' compensation judge accepted the terms of the agreement in his findings of fact, and we may not question those findings unless they are arbitrary and capricious. *See Lehigh County Vo–Tech Sch. v. WCAB (Wolfe),* 539 Pa. 322, 652 A.2d 797, 800 (1995).

That said, the Idaho Supreme Court has recently questioned the vitality of "any characterization of damages [in a settlement agreement] to which the employer is not priv[ied]...." *Struhs v. Prot. Techs., Inc.,* 133 Idaho 715, 992 P.2d 164, 170 (1999). While we again stress that there is no basis in fact of record for the accusation that SEPTA and Claimant acted with unclean hands, we generally agree with the sentiments of the Idaho court and would suggest that, moving forward, if the Commonwealth, its agencies, or political subdivisions wish to construct settlement agreements like that presented instantly, all interested parties, including the employer or its workers' compensation carrier, should be party to the settlement discussions. Incorporating all around the proverbial conference table would help ensure that the dual goals of preventing double recovery and protecting the public fisc are met.

tured properly, claimants will not receive any double recovery of benefits, *see Poole v. WCAB (Warehouse Club, Inc.)*, 570 Pa. 495, 810 A.2d 1182, 1184 (2002); as *amicus curiae* the Port Authority of Allegheny County (PAT) states, the agreements would not "include amounts for damages covered by workers' compensation benefits." Brief of PAT at 5.[12]

While Bayada Nurses asserts to the contrary that application of Section 23 of Act 44 to this case will nullify the tripartite purpose of subrogation/reimbursement—the prevention of double recovery; the avoidance by employers of payment for injuries that are the fault of others; and ensuring liable third-parties are held responsible for their negligence— Section 23 of Act 44, as applied to this case, in actuality strikes an ideal balance between these three goals and the primary purpose of sovereign immunity, protection of the public fisc. First, double recovery will be prevented upon the proper structuring of settlement agreements and judgments.[13] Next, negligent governmental entities will not escape liability, as they will pay some damages either by settlement or verdict award; indeed, SEPTA in the instant appeal paid Claimant $75,000. Finally, while it is accurate that employers will be required to make some compensation payments despite the negligence of a governmental entity, this is occurring as a matter of legislative prerogative to protect the public treasuries.

This final point illustrates that our reading of Section 23 of Act 44 gives full effect to the apparent legislative purpose behind the statute as a whole. As noted, Section 25(b) of Act

12. This final point is not absolute, as courts have previously found that the labeling of damages as non-workers' compensation monies, *i.e.*, pain and suffering, will not operate to frustrate an employer's subrogation rights. *See Bumbarger v. Bumbarger*, 190 Pa.Super. 571, 155 A.2d 216 (1959); *but see supra* note 11. Nevertheless, the point remains: settlements like those presented here easily operate to serve the goals of both workers' compensation and sovereign immunity, and are completely consistent and in accord with Section 23 of Act 44.

13. We note in this regard that there is no reason to believe that the Commonwealth would pay a penny more than necessary to resolve a claim. Thus, it is the governmental entity, which will protect the public fisc in this regard by refusing to pay a claimant benefits already recouped through the workers' compensation system.

44 expanded the absoluteness of subrogation and reimbursement to employers/insurers to cases involving the MVFRL, while Section 23 of Act 44 protected the Commonwealth from this expansion. Evidently, the legislature felt it prudent to protect the public treasury despite the need to assist Pennsylvania's ailing business climate. Courts have commented that the judiciary should not interject equitable principles or exceptions into the statutorily authorized subrogation within the workers' compensation scheme, as it should be left to the legislature to make the policy decisions surrounding those exceptions. *See Thompson,* 781 A.2d at 1153–54. Here, with Section 23 of Act 44, the General Assembly, through duly passed legislation, did just that.

In sum, this case presents two competing absolutes: the right of subrogation and reimbursement in workers' compensation, and the constitutionally provided immunity of the sovereign and its subdivisions. Through Section 23 of Act 44, the General Assembly relegated the right of subrogation and reimbursement to the sovereign's immunity through a narrowly tailored exception to a general rule. Accordingly, for the reasons stated herein, we reverse the order of the Commonwealth Court, and reinstate the decision of the workers' compensation judge.[14]

Jurisdiction relinquished.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE. Justices SAYLOR, EAKIN, TODD and McCAFFERY join the opinion.

---

**14.** To the extent the Commonwealth Court's decision in *Fox v. WCAB (PECO Energy Co.),* 969 A.2d 11 (Pa.Cmwlth.2009) is contrary to this opinion, it is hereby disapproved.