IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Darrell L. Clarke      :
From a Decision of Zoning       :
Board of Adjustment          :
                             : No. 249 C.D. 2023
Appeal of: Darrell L. Clarke      : Argued: April 9, 2024

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE WALLACE                       FILED: May 24, 2024

Darrell L. Clarke (Council President), former President[1] of the City of Philadelphia (City) Council, appeals from the February 10, 2023 order of the Court of Common Pleas of Philadelphia County (Common Pleas), which: (1) determined Council President lacked standing to appeal a decision of the City's Zoning Board of Adjustment (ZBA) granting 1451 N. Broad Street, LLC (Landowner) a variance, and (2) quashed Council President's appeal. Council President argues this Court should vacate Common Pleas' order quashing his appeal, because he had standing to appeal the ZBA's decision as City Council's designated representative pursuant to a validly enacted resolution. Upon review, we affirm.

---

[1] Although Darrell L. Clarke was City Council President from the time he filed his initial appeal through briefing before this Court, he is no longer a member of the City Council. *See* https://phlcouncil.com/council-members/ (last visited May 23, 2024); City Council President Darrell Clarke talks Philly's future as tenure comes to an end, https://www.nbcphiladelphia.com/ news/politics/city-council-president-darrell-clarke-talks-phillys-future-as-tenure-comes-to-an-end/3718552/ (last visited May 23, 2024).

## I. Background

Common Pleas set forth the facts underlying this appeal, which are not in dispute, as follows:

> [Landowner] is the owner of a commercially zoned . . . property located at 1451 N. Broad St. Due to a water department right-of-way that crosses through the property and reduces the footprint of any potential development on the property, [Landowner] sought a height variance to construct a mixed-use building that would exceed the normal height for a building [in the zoning district.] The Department of Licenses and Inspections denied the variance. [Landowner] appealed the decision to the [ZBA]. The proceedings before the ZBA, which involved an initial vote, an appeal to the court of common pleas, a remand [] to the ZBA, and a new vote by the ZBA, eventually resulted in the ZBA granting the variance.
>
> [Council President], in his purported capacity "as designated representative of Philadelphia City Council," appealed the ZBA's decision to [Common Pleas.]

Reproduced Record (R.R.) at 257.[2]

Common Pleas reviewed the ZBA's certified record and the parties' briefs. *Id.* at 257. In addition, the parties presented oral argument to Common Pleas. *Id.* Landowner argued before Common Pleas that Council President lacked standing to appeal the ZBA's decision pursuant to *O'Neill v. Philadelphia Zoning Board of Adjustment*, 169 A.3d 1241 (Pa. Cmwlth. 2017). *See* R.R. at 217-29. In *O'Neill*, a City Council member, in his individual capacity, appealed a decision of the ZBA for a property located in his legislative district. *O'Neill*, 169 A.3d at 1243-45. The property's owner challenged the councilmember's standing, arguing he was not personally aggrieved and did not have legislative standing. *Id.* at 1244. In response,

---

[2] Council President failed to include a lowercase "a" following the page numbers in his reproduced record, in violation of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2173.

2

the councilmember argued, relevantly, that he had standing under Section 17.1 of the First Class City Home Rule Act[3] (Home Rule Act) and Section 14-303(15)(b)(.1) of the Philadelphia Zoning Code[4] (Zoning Code). *O'Neill*, 169 A.3d at 1244.

Section 17.1 of the Home Rule Act, which applies to the City, provides:

> In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, the term "aggrieved person" does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development.

Added by the Act of November 30, 2004, P.L. 1523, 53 P.S. § 13131.1. Likewise, Section 14-303(15)(b)(.1) of the Zoning Code provides that "any aggrieved party or . . . City Council" may appeal a final decision of the ZBA.

In *O'Neill*, this Court noted:

> The plain language of both the Home Rule Act and the [Zoning] Code grants standing to City Council as a body, nowhere does either grant standing to individual councilmembers. The Home Rule Act and [Zoning] Code could have easily been drafted to include language granting standing to individual councilmembers if that was the intent; however, neither was drafted a such. This Court cannot insert language or otherwise redraft the Home Rule Act or the [Zoning] Code. Moreover, whether councilmembers have appealed zoning decisions in the past and whether constituents can afford to appeal are not considerations for this Court and do not allow this Court to ignore the plain language of the Home Rule Act and the [Zoning] Code. Likewise, the fact that the trial court deems it "cumbersome" for City Council to pass a resolution authorizing a councilmember to appeal a zoning decision before the trial court adjudicates the matter is not relevant. Our review of the pleadings indicates that [the councilmember] has

---

[3]  Act of April 12, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101-13157.

[4]  City of Philadelphia, Pa., Zoning Code (2012), *as amended*.

> appealed the [ZBA's] decision in his capacity as an individual member of City Council. Thus, [the councilmember] lacks standing under the Home Rule Act and the [Zoning] Code to appeal from the [ZBA's] decision.

*O'Neill*, 169 A.3d at 1245.

Council President argued before Common Pleas that after this Court's decision in *O'Neill*, City Council adopted Resolution No. 200064 (Resolution 200064),[5] which authorized him to appeal the ZBA's decision as City Council's designated representative. *See* R.R. at 233-35, 250. Due to his status as City Council's representative pursuant to Resolution 200064, Council President argued he was exercising City Council's standing under the Home Rule Act and the Zoning Code, and *O'Neill* no longer applies.

In quashing Council President's appeal for lack of standing, Common Pleas reviewed this Court's decision in *O'Neill*. R.R. at 262. Common Pleas then opined that City Council's rules of parliamentary procedure prohibit it from "delegat[ing] a duty to an individual where that duty is specifically vested (by statute) to the City Council as a whole." *Id.* Because Resolution 200064 purported to allow one member of City Council to appeal a ZBA decision while City Council as a body has statutory standing, Common Pleas determined Resolution 200064 "is not a legal and binding act of City Council as a whole that is specific to this case." *Id.* at 263. As a result, Common Pleas concluded Resolution 200064 "does not confer standing upon [Council President]" and quashed Council President's appeal. *Id.* Council President timely appealed to this Court. *Id.* at 264.

---

[5] The full text of Resolution 200064 is included below.

## II. Issues

On appeal, Council President argues he was authorized to exercise City Council's standing in pursuing this appeal as City Council's designated representative pursuant to Resolution 200064. *See* Appellant's Br. at 4-5. Council President further argues Common Pleas misinterpreted Resolution 200064, which "was not meant to confer standing, but instead . . . provide[s] a mechanism by which City Council can efficiently exercise its standing." *Id.* at 6. In addition, Council President argues his actions in appealing the ZBA's decision on City Council's behalf was proper because City Council passed Resolution No. 230169 (Ratifying Resolution) on March 9, 2023, specifically authorizing and ratifying the actions he took in this matter and permitting him to "take all further steps on behalf of and as representative of Council with respect to such appeals as [Council President] determines [are] appropriate for the successful prosecution of such appeal, including, if necessary, any further appeals." *Id.* at 8, Ex. B.

In response to Landowner's arguments that this Court's decision in *O'Neill* controls this matter and that City Council exceeded its authority by delegating its standing to individual City Council members, Council President argues Resolution 200064 does not implicate non-delegation principles because it is a procedural resolution that does not delegate the power to enact legislation. *See* Appellant's Reply Br. at 2. Instead, Council President contends "the resolution authorizes [him] to designate a council member to take the procedural steps to obtain legal counsel for City Council and then appeal zoning decisions on [its] behalf." *Id.* In addition, Council President responded to Landowner's arguments that this Court could not consider the Ratifying Resolution because it is not part of the record on appeal by arguing the Ratifying Resolution "is a duly passed resolution of City Council and

5

should be considered by this Court like any other relevant legal authority that bears on a relevant issue." *Id.* at 3. Council President also argues this Court "can take judicial notice of [the Ratifying Resolution] under established law." *Id.*

After the parties filed briefs with this Court, Council President retired from City Council. Thereafter, Landowner filed an Application to Quash this appeal, arguing Council President lacks any standing he may have had by virtue of his position as a member of City Council, and this Court must dismiss the case as moot. City Councilmember Jeffery Young, Jr. (Councilmember Young) answered the Application to Quash, asserting he was automatically substituted as Council President's successor pursuant to Pennsylvania Rule of Appellate Procedure 502(c) (Rule 502(c)).

## III. Analysis

As a preliminary matter, we disagree with Landowner's assertion that Council President's retirement from City Council renders this appeal moot. As Councilmember Young properly noted, Rule 502(c) provides:

> When a public officer is a party to an appeal or other matter in an appellate court in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the matter does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

Pa.R.A.P. 502(c). Rule 502(c) applies to Council President's retirement, and Councilmember Young, as Council President's successor in representing the City's 5th District (which is the district where Landowner's property is located), is appropriately substituted for Council President. Accordingly, Councilmember

6

Young is permitted to pursue this appeal, and we deny Landowner's Application to Quash.

Turning to the merits of this appeal, which are limited to whether Council President had standing to pursue his appeal to Common Pleas, we note that "[t]hreshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Johnson v. Am. Standard*, 8 A.3d 318, 326 (Pa. 2010) (citation omitted). In other words, we do not defer to the lower court's conclusions of law, and we review the entire record with a fresh pair of eyes.

"In Pennsylvania, a party seeking judicial resolution of a controversy 'must establish . . . he has standing to maintain the action.'" *Johnson*, 8 A.3d at 326 (citing *Fumo v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009)). Standing is generally a judicially created doctrine in Pennsylvania, requiring a person to be "adversely affected in [some] way by the matter he seeks to challenge." *Id.* There are, however, instances where statutes expressly confer standing upon additional parties. *See, e.g.*, Pa.R.A.P. 501 ("Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order . . . may appeal therefrom.").

Under Section 17.1 of the Home Rule Act, "City Council is the governing body vested with legislative powers providing it with standing in zoning decisions." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 693 (Pa. Cmwlth. 2020) (citation omitted). "Thus, under the plain language of the Home Rule Act, standing to appeal a zoning decision in the City is limited to two classes – aggrieved persons[6] and . . . the City Council . . . ." *O'Neill*, 169 A.3d at 1245. Section 14-303(15)(b)(.1) of the Zoning Code also provides that any aggrieved party or "City Council" may appeal a final decision of the ZBA.

---

[6] Neither Council President nor Councilmember Young have asserted they are aggrieved persons.

7

Council President posits City Council created a way around this Court's holding in *O'Neill* that individual councilmembers who are not aggrieved persons do not have standing to appeal from decisions of the ZBA under Section 17.1 of the Home Rule Act and Section 14-303(15)(b)(.1) of the Zoning Code. Council President's arguments all rest squarely upon his belief that Resolution 200064 authorized him to appeal the ZBA's decision on City Council's behalf.

To determine if Council President's reliance on Resolution 200064 is proper, we must begin by examining Resolution 200064. Although the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. §§ 1501-1991, is not expressly applicable to the construction of City Council legislation, we have consistently applied the rules of statutory construction to interpret City Council legislation. *See, e.g.*, *SPTR, Inc. v. City of Phila.*, 150 A.3d 160, 169 (Pa. Cmwlth. 2016) (utilizing the rules of statutory construction to interpret a provision of the Zoning Code). The primary objective of statutory construction is to determine legislative intent. *See* Section 1921(a) of the Act, 1 Pa.C.S. § 1921(a). "When the words of a statute are free and clear from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Act, 1 Pa.C.S. § 1921(b). Therefore, we "will only look beyond the plain meaning of the statute where the words of the statute are unclear or ambiguous." *Commonwealth v. Diodoro*, 970 A.2d 1100, 1106 (Pa. 2009). In addition, we should "not insert words . . . that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012) (citation omitted).

With these principles in mind, we turn to Resolution 200064's text, which provides:

# RESOLUTION

Authorizing requests to the Law Department to represent City Council in appeals from decisions of the Philadelphia Zoning Board of Adjustment and, if the Law Department declines to render such services to City Council, authorizing the retention of outside counsel to provide such services.

WHEREAS, The Philadelphia Zoning Board of Adjustment ("ZBA") has jurisdiction over a variety of matters arising under Title 14 of The [Zoning Code]; and

WHEREAS, Decisions of the ZBA directly affect the legislative policy of City Council as expressed in the Zoning Code and in other duly enacted ordinances and resolutions; and

WHEREAS, For that reason, City Council wishes to be able to participate in appeals from ZBA decisions, whether to appeal from ZBA decisions contrary to the legislative policy of City Council, or to support the decisions of the ZBA that are consistent with the legislative policy of City Council; and

WHEREAS, Section 2-105 of the Philadelphia Home Rule Charter provides that "[i]n the event the Law Department declines to advise or render legal services to the Council in any matter . . . the Council may employ and fix the compensation of counsel of its own selection to handle such matter"; now, therefore, be it

RESOLVED, BY THE COUNCIL OF THE CITY OF PHILADELPHIA, That the President of City Council may from time to time designate a member of City Council to serve as the designated representative of City Council with authority to request the Law Department to represent City Council in an appeal from a particular decision or decisions of the Philadelphia Zoning Board of Adjustment, and with authority to take any other actions necessary to carry out the intent of this Resolution.

FURTHER RESOLVED, That if the Law Department declines any request to represent City Council pursuant to this Resolution, then the Council hereby authorizes the retention of outside counsel to represent City Council in such matter.

R.R. at 249.

Resolution 200064's preamble is wholly focused on authorizing City Council to obtain representation for appeals from ZBA decisions by either the City's Law Department or outside counsel. The "whereas" clauses stress the importance of City Council's ability to pursue appeals of ZBA decisions. The "whereas" clauses then identify that "Section 2-105 of the Philadelphia Home Rule Charter provides that 'in the event the Law Department declines to advise or render legal services to the Council in any matter . . . the Council may employ and fix the compensation of counsel of its own selection to handle such matter.'" *Id.* Thus, Resolution 200064's purpose and intent, as plainly revealed in its preamble and whereas clauses, is to facilitate City Council's ability to obtain legal representation for appeals of ZBA decisions.

After explaining its purpose and intent, Resolution 200064 authorizes the City Council President to give a member of City Council "authority to request the Law Department . . . [to] **represent City Council** in an appeal from a particular decision or decisions of the [ZBA], and . . . to take any other actions necessary to carry out the intent of this Resolution." *Id.* (emphasis added). Finally, Resolution 200064 provides "[t]hat if the Law Department declines any request **to represent City Council** pursuant to this Resolution, then the Council hereby authorizes the retention of outside counsel **to represent City Council** in such matter." *Id.* (emphasis added).

Resolution 200064 does not address City Council's pursuit of appeals from ZBA decisions beyond obtaining counsel, which Resolution 200064 repeatedly references as counsel "to represent City Council," and not as counsel to represent a designated member of City Council on behalf of City Council. In addition, Resolution 200064 does not reference Section 17.1 of the Home Rule Act, or even mention standing. In contrast, Resolution 200064 explicitly references Section

10

2-105 of the Philadelphia Home Rule Charter relating to obtaining legal representation. This demonstrates City Council is able to correctly identify the law which gives it authority to issue a resolution. City Council's failure to reference Section 17.1 of the Home Rule Act, or even some principle of standing, also demonstrates that, contrary to Council President's arguments, Resolution 200064 was not intended to "provide a mechanism by which City Council can efficiently exercise its standing." *See* Appellant's Br. at 6.

For these reasons, we conclude Resolution 200064's clear and unambiguous language does not authorize individual members of City Council to appeal decisions of the ZBA on behalf of City Council. Council President was not, therefore, authorized to appeal the ZBA's decision in this matter on City Council's behalf under Resolution 200064.

Council President, now Councilmember Young, also argues the Ratifying Resolution cured any defects in Resolution 200064 because it expressly authorized and ratified Council President's appeal in the matter. City Council passed the Ratifying Resolution on March 9, 2023, over one year after Council President filed an appeal of the ZBA's decision with Common Pleas, and nearly one month after Common Pleas issued its February 10, 2023 final order quashing Council President's appeal for lack of standing. Even if we were to consider the Ratifying Resolution, and even if we were to determine it was valid, City Council did not provide any argument or binding authority[7] to support its purported ability to retroactively

---

[7] Council President argued the Ratifying Resolution was enacted to ratify Council President's actions pursuant to Judge Brobson's, now Justice Brobson, concurring opinion in *O'Neill*. *See* Appellant's Reply Br. at 13-14. First, we note that Judge Brobson's concurrence in *O'Neill* is not binding authority. Nevertheless, in his concurrence in *O'Neill*, Judge Brobson indicated he was writing separately because he "can fathom a circumstance where the [City Council] may not be nimble enough to act as a body within the time constraints for challenging . . . a decision [of the **(Footnote continued on next page…)**

11

authorize a councilmember to file an appeal on its behalf. Thus, the Ratifying Resolution does not cure Resolution 200064's defects.[8] *See Commonwealth v. Brown*, 196 A.3d 130, 185 n.21 (Pa. 2018) ("[A]ppellate courts are 'neither obligated, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter.'").

Accordingly, we are left with a situation similar to the one this Court previously analyzed in *O'Neill*. Council President, while attempting to appeal on behalf of City Council, did not have valid authorization from City Council to appeal on its behalf. Therefore, like in *O'Neill*, we conclude Council President, as an individual councilmember, lacks standing under the Home Rule Act and the Zoning Code to appeal from the Board's decision.

## IV. Conclusion

For the reasons set forth above, we deny Landowner's Application to Quash Council President's, now Councilmember Young's, appeal. Nevertheless, we conclude neither Resolution 200064 nor the Ratifying Resolution authorized Council President's appeal from the ZBA's decision in this matter. Accordingly, Council President lacked standing under Section 17.1 of the Home Rule Act and Section 14-303(15)(b)(.1) of the Zoning Code, and we affirm Common Pleas' order

---

ZBA]. In that situation, it may be adequate for a councilperson to initiate a challenge on behalf of City Council, with prompt formal action by City Council thereafter ratifying the appeal." *O'Neill*, 169 A.3d at 1247 (Brobson, J., concurring). City Council's act in passing the Ratifying Resolution was not "prompt." Thus, even if we applied Judge Brobson's more permissive approach, the Ratifying Resolution would not cure Council President's lack of standing.

[8] Because we concluded, under these facts, that neither Resolution 200064 nor the Ratifying Resolution authorized Council President's appeal, we do not reach the question of whether City Council could validly pass an ordinance or resolution designating a legal representative for purposes of appealing ZBA decisions.

12

quashing Council President's, now Councilmember Young's, appeal for lack of standing.[9]

 

 

 

_____

STACY WALLACE, Judge

---

[9] While Common Pleas opined Council President lacked standing because Resolution 200064 was invalid, this Court may affirm an order on appeal if it is "right for any reason." *In re A.J.R.-H.*, 188 A.3d 1157, 1175–76 (Pa. 2018). Under this "right for any reason" doctrine, a reviewing court has the authority to affirm a lower court's decision on any basis, so long as it is supported by the record. *Id.* In *Securities and Exchange Commission v. Chenery Corporation*, 318 U.S. 80, 88 (1943), the United States Supreme Court explained that "[i]t would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground." Therefore, in cases where the facts of record are undisputed, we may apply the "right for any reason" doctrine. *Bearoff v. Bearoff Bros.*, 327 A.2d 72, 76 (Pa. 1974). Where disputed facts must be resolved, however, our Court does not "assum[e] the role of fact-finder in an attempt to sustain the action of the court below." *Id.* Rather, we apply the "right for any reason" doctrine in cases where the undisputed facts support a legal conclusion which, while different from the lower court's legal conclusion, produces the same outcome. *In re A.J.R.-H.*, 188 A.3d at 1175-76.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Darrell L. Clarke       :
From a Decision of Zoning       :
Board of Adjustment          :
                              : No. 249 C.D. 2023
Appeal of: Darrell L. Clarke       :

# **O R D E R**

**AND NOW**, this 24th day of May 2024, 1451 N. Broad Street, LLC's February 6, 2024 Application to Quash this appeal is **DENIED**, and the February 10, 2023 order of the Court of Common Pleas of Philadelphia County, which quashed Darrell L. Clarke's appeal of a decision of the Zoning Board of Adjustment for lack of standing, is **AFFIRMED**.

 

_____
STACY WALLACE, Judge